**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD H. WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-99 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge.

## I.  INTRODUCTION

Richard H. Wheeler ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff filed his application on July 2, 2009, alleging disability since April 1, 2009 due to detached retinas in both eyes (AR 83-91; 109).[1] His application was denied and he requested and was granted an administrative hearing before an administrative law judge ("ALJ") (AR 56-59; 66-67).

Following a hearing held on May 17, 2010 (37-53), the ALJ concluded, in a written decision dated July 6, 2010, that Plaintiff was not entitled to a period of disability or DIB under the Act (AR 16-23). Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed his complaint challenging the ALJ's decision, and presently pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

1

## II.     BACKGROUND[2]

Plaintiff was 54 years old on the date of the ALJ's decision and completed school through the 11th grade (AR 114). He has past relevant work experience as a foundry supervisor and tube bender (AR 110). He stopped working on January 28, 2009 after being laid off (AR 109).

Plaintiff presented to the emergency room at the Meadville Medical Center on April 19, 2009 and complained of vision problems in his right eye (AR 170). He reported a past history of a detached retina of his left eye (AR 170). He was diagnosed with a detached retina of the right eye and was referred for surgery (AR 170). Plaintiff subsequently had surgery to reattach his retina on April 20, 2009, and when seen by Donald Santora, M.D. on April 23, 2009, he had no pain complaints (AR 183). On April 29, 2009, Plaintiff complained of a "hazey view," and on May 6, 2009, he reported that his vision was "cloudy" (AR 180; 182). Plaintiff had subsequent retina detachments and additional surgeries to repair the same (AR 198).

On June 23, 2009, Plaintiff was evaluated by Robert Bergren, M.D., from Retina Vitreous Consultants, and was diagnosed with a recurrent retinal detachment with associated proliferative vitreoretinopathy[3] in his right eye (AR 199). Dr. Bergren informed Plaintiff that without surgery his vision would be "very poor," and with successful surgery, he would not obtain reading acuity but would have functional, ambulatory type vision (AR 199). Dr. Bergren found that his left eye was stable and did not anticipate that Plaintiff would have any further problems with that eye (AR 199). Dr. Bergren reported that Plaintiff was otherwise healthy with no systemic medical problems and was on no medications (AR 198).

Plaintiff subsequently had surgery on July 7, 2009 and was reportedly "doing well" on July 9, 2009 (AR 196-197). He was thereafter informed by Dr. Bergren that he could resume his daily activities (AR 194). When Plaintiff was contacted by the Social Security Administration

---

[2] The medical record contains treatment note entries from Michael Mercatoris, Ph.D. from August 2005 through December 18, 2008 (AR 215-2444). Plaintiff does not challenge the ALJ's evaluation with respect to any mental impairment; therefore, this evidence will not be discussed herein.

[3] Proliferative vitreoretinopathy is the abnormal proliferation of cells on both surfaces of the retina and the vitreous face resulting in the formulation of a membrane which causes puckering and retraction of the retina. *See* https://www.medify.com/conditions/proliferative-vitreoretinopathy.

2

on August 6, 2009, he reported that he was not being treated for any other conditions and did not have a primary care physician (AR 206). On August 8, 2009, Plaintiff completed a functional report with regard to his activities (AR 129-136). Plaintiff reported that he lived alone, maintained his personal care, watched television, kept track of bills and appointments, performed household chores, completed light yard work, and prepared meals daily (AR 129; 131). He also claimed he went outside several times a day, walked, drove a car and used public transportation (AR 132). Plaintiff further reported that he "often" went on dates, ate at restaurants, attended church, music shows, and the movies (AR 133). He indicated that he had difficulty walking and driving at night due to difficulty seeing, and used a magnifying glass to pay his bills (AR 132). Plaintiff stated that he could walk "a long ways," had no problem paying attention, could follow instructions, got along well with authority figures, and was "good" at handling stress (AR 134-135).

Plaintiff returned to Dr. Bergren on August 13, 2009, and denied suffering from pain, but reported problems with his vision and that his "color perception was gone" (AR 177). On August 14, 2009, Plaintiff was seen by Judy Liu, M.D. from Retina Vitreous Consultants, and complained of vision problems (AR 192). Dr. Liu found Plaintiff had wrinkling of the retina from what appeared to be an epiretinal membrane, but there was no retina detachment (AR 192). When seen by Dr. Bergren on August 17, 2009, Dr. Bergren found that Plaintiff clearly had a change of vision in his right eye but the cause was unclear (AR 189). His condition was unchanged from his previous examination (AR 189). Dr. Bergren recommended that Plaintiff be observed for a few weeks to see if his vision changed any further (AR 189).

On September 11, 2009, Frank Bryan, M.D., a state agency reviewing physician, reviewed the medical evidence of record and concluded that Plaintiff could occasionally lift twenty pounds, frequently carry ten pounds, stand and/or walk for a total of six hours in an 8-hour workday, sit for about six hours in an 8-hour workday, and was unlimited in pushing and pulling activities (AR 208-209). He further found Plaintiff could occasionally climb, and frequently balance, stoop, kneel, crouch and crawl, but was limited in his field of vision (AR 209). He noted that he should avoid concentrated exposure to hazards such as machinery and

3

heights (AR 210). In support of his conclusion, he relied, in part, on Dr. Bergren's treatment note dated August 17, 2009 (AR 212-213).

Plaintiff returned to Dr. Bergren on October 6, 2009 and reported that at times his vision was fairly clear but then "fade[d] out" and became "poor" (AR 296). Dr. Bergren reported that Plaintiff's right eye was "very stable" and looked good anatomically (AR 296). He was "a bit surprised" that Plaintiff's vision was not better, and recommended surgical removal of the silicone oil (AR 297). Plaintiff underwent the surgery on October 26, 2009 (AR 294-295).

Plaintiff returned to Dr. Bergren for a follow-up evaluation on February 25, 2010 (AR 292-293). Dr. Bergren reported that Plaintiff's right eye was stable with some "useful vision" (AR 293).

On March 30, 2010, Dr. Santora completed a form entitled "Vision Impairment Residual Functional Capacity Questionnaire" (AR 304-305). Dr. Santora indicated that Plaintiff suffered from "poor" vision in his right eye secondary to chronic retinal detachment (AR 304). He further opined that Plaintiff's near and far visual acuity was such that it would not preclude him from performing work activities (AR 305). He found that Plaintiff had no exertional or postural limitations related to his vision problems, although he could only "rarely" climb ladders (AR 305). Dr. Santora imposed no limitation on Plaintiff's ability to lift and carry (AR 305).

On April 10, 2010, W. Brad Schorr, M.D., completed a Physical Residual Functional Capacity Questionnaire (AR 306-309). Dr. Schorr diagnosed Plaintiff with osteoarthritis and poor vision, and indicated that he suffered from joint and back pain exacerbated by standing for long periods and on exertion (AR 306). He reported that Plaintiff used over-the-counter medication "as needed" for pain (AR 306). Dr. Schorr opined that Plaintiff "frequently" experienced pain or other symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks (AR 307).[4] He further opined that Plaintiff could sit and stand for more than two hours at a time (AR 307). Dr. Schorr concluded that Plaintiff could sit, stand, and walk for at least six hours in an 8-hour workday, could lift up to 20 pounds occasionally and less than 10 pounds frequently, and could occasionally perform postural

---

[4] "Frequently," as defined on the form, meant 34% to 66% of an 8-hour working day (AR 307).

activities (AR 308). He indicated that Plaintiff needed a sit/stand option, but did not need to take unscheduled breaks during the day (AR 308). Dr. Schorr noted that Plaintiff's impairments were likely to produce "good days" and "bad days", requiring him to be absent from work more than four days per month (AR 309). Dr. Schorr stated that his conclusions were based upon his assessment and conversation with the Plaintiff on March 22, 2010 (AR 307). He did not, however, complete the portion of the form requesting that he identify the clinical and objective findings supporting his assessment (AR 306).

Plaintiff and Edith Edwards, a vocational expert, testified at the hearing held by the ALJ on May 17, 2010 (AR 37-53). Plaintiff testified that he stopped working in January 2009 after he was laid off (AR 41). Plaintiff further testified to undergoing multiple eye surgeries that had failed to fully restore his vision (AR 41-42). He indicated that he suffered from blurred vision and had problems with depth perception (AR 41-42). He stated that he had trouble grooming his hair, had difficulty pouring drinks, and had trouble reading due to vision deficiencies (AR 42-43). He testified that he was able to drive during the day but not at night (AR 42). Plaintiff indicated he was not taking any medications for his impairments (AR 44). He stated that he could lift 25 pounds and had no difficulty sitting (AR 44). Plaintiff testified that he became "winded" while walking, and that he suffered from arthritis in both ankles and elbows (AR 44; 49). Plaintiff stated that his ankles had been broken in past car and work accidents (AR 49). He indicated that his girlfriend performed the majority of the household chores, although he was able to shop for necessities (AR 43; 45).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to lift and carry 10 pounds frequently and 20 pounds occasionally; sit for up to eight hours or stand six hours in an eight-hour workday; perform only occasional bending and squatting; and be allowed a sit/stand option (AR 51). The individual could not perform any climbing, work at unprotected heights, or work around dangerous machinery (AR 51). Such individual could not perform jobs requiring fine visual acuity or jobs requiring him to follow written instructions (AR 51). The vocational expert testified that such an individual could perform the jobs of a hand packer and host/usher (AR 51-52).

5

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 16-23). His request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). He subsequently filed this action.

### III.   STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

### IV.   DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ concluded that Plaintiff's diminished vision, status post bilateral retinal reattachment surgeries, and osteoarthritis were severe impairments, but determined at step three that he did not meet a listing (AR 18-19). The ALJ described the Plaintiff's residual functional capacity as follows:

> …[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can do work that allows him the opportunity to alternate between sitting and standing, but does not involve climbing, working at unprotected heights, or working around dangerous machinery. Additionally, the claimant can do work that does not involve following written job instructions or fine visual acuity, and involves only occasional bending and squatting.

(AR 19). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 22-23). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

7

Plaintiff's challenges are limited to the ALJ's evaluation of the medical and opinion evidence relative to his osteoarthritis. Following his discussion of the treatment note entries relating to the Plaintiff's vision problems, the ALJ stated:

> The claimant also has a brief history of osteoarthritis (Ex. 12F). Evaluating physician Dr. W. Brad Schorr noted in April 2010 that the claimant complained of back and joint problems, especially in his ankles. Following an interview of the claimant and a review of his records, Dr. Schorr opined that the claimant's combination of impairments would reduce his capacity to light activity in work that allowed the opportunity to sit and stand as needed; but that the claimant could perform work that involved moderate stress, but indicate that the claimant's impairments would cause him to be absent from work 4 or more days each month.
>
> In reviewing the claimant's records in September 2009, DDS consultant Dr. Frank Bryan indicated that the claimant responded well to corrective right eye surgery, and was fairly stable on medication (Ex. 5F). He noted that the claimant reported independence in taking care of his own personal needs, and stated that he could perform mots household chores. However, he maintained that he was only able to drive during daytime hours. Summarily, Dr. Bryan opined that the claimant could do light work activity that did not involve climbing ropes and scaffolds, working at unprotected heights, or working around dangerous equipment; but could occasionally climb ladders. Additionally, he noted that the claimant could frequently stoop, crouch, crawl, and balance, but had limited field of vision that limited his activities requiring fine visual acuity of binocular vision.
>
> The undersigned gives great weight to the well-supported DDS assessment, as the evidence of record reflected that the claimant's activities of daily living and significant visual improvement does not preclude all work activity (SSR 96-6p). Although the undersigned give moderate weight to the assessment of Dr. Schorr, he does not find that the evidence of record indicated that the claimant would be so limited that he would be absent from work 4 or more days each month. The undersigned also gives Dr. Santora's assessment moderate weight as the evidence indicated that the claimant has limited depth of perception and his fine binocular field of vision impact his work-related activities. However, the undersigned finds that the combination of impairments do no preclude all work-related activities.

(AR 21).

Plaintiff first challenges the ALJ's decision to accord great weight to the opinion of Dr. Bryan, the state agency reviewing physician, in assessing his residual functional capacity

("RFC").[5]  Dr. Bryan concluded that Plaintiff could perform light work but was limited in his field of vision and ability to work around hazards (AR 209-210).  We first observe that state agency reviewing physicians are "highly qualified … who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(e)(2)(i); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("State agent opinions merit significant consideration as well.").  Plaintiff argues that Dr. Bryan's assessment does not constitute substantial evidence supporting the ALJ's RFC assessment because his review of the evidence was "extremely limited" and he "did not review any medical records regarding the Plaintiff's physical limitations resulting from his arthritis and joint pain" and, therefore, his opinion regarding the Plaintiff's functional abilities was "pure speculation."  *See* [ECF No. 10] p. 10.

To the extent Plaintiff contends that Dr. Bryan's assessment should have been accorded diminished weight since it was not based on a review of the entire record, we find this argument without merit.  The Third Circuit recently addressed this issue, stating: "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision.  The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."  *Chandler*, 667 F.3d at 361 (finding that the ALJ properly relied on records that were "a few years old").

We further reject Plaintiff's argument that the ALJ's reliance on Dr. Bryan's assessment was suspect since it was rendered on a "form report" constituting "weak evidence at best" of his functional limitations.  *See* [ECF No. 10] p. 10.  Contrary to the Plaintiff's argument, however, Dr. Bryan's assessment was accompanied by an explanation for his findings.  In concluding that Plaintiff could perform light work with some visual and environmental limitations, Dr. Bryan included Dr. Bergren's treatment note dated August 17, 2009 (AR 212-213).  Dr. Bryan also observed that Plaintiff had undergone surgery for his vision impairment, which had resulted in

---

[5] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a).  An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(2).  In making this determination, the ALJ must consider all the evidence before him.  *Burnett*, 220 F.3d at 121.

significant improvement in his symptoms, and that he had not undergone any additional retinal procedures (AR 213). He noted that Plaintiff had been prescribed and taken appropriate medications for his impairments, which had been generally successful in controlling his symptoms (AR 213). He further observed that while Plaintiff had provided inconsistent information regarding his daily activities, he was nonetheless able to drive a car, go shopping, take public transportation, live alone and maintain his trailer (AR 213). Finally, Dr. Bryan noted that Plaintiff stopped working for reasons unrelated to his alleged impairments (AE 213). Accordingly, we find no error in the ALJ's partial reliance on Dr. Bryan's assessment in evaluating Plaintiff's RFC.

The Court likewise rejects the Plaintiff's challenges to the ALJ's evaluation of Dr. Schorr's opinion. Like Dr. Bryan, Dr. Schorr also concluded that Plaintiff could perform light work (AR 306-308). The only portion of Dr. Schorr's opinion rejected by the ALJ was his opinion relative to the frequency of missed work. The ALJ concluded that this limitation was not supported by the Plaintiff's daily activities or the remaining evidence of record (AR 21). Accordingly, the ALJ accorded Dr. Schorr's opinion only moderate weight (AR 21). Plaintiff argues that the ALJ "failed to complete the record" regarding his osteoarthritis and should have recontacted Dr. Schorr and/or sent him for a consultative examination. *See* [ECF No. 10] p. 11. We disagree. The Commissioner's regulations provide that an ALJ must recontact a medical source "when the report from [Plaintiff's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (quoting 20 C.F.R. § 416.912(e)(1)).[6] Recontact is only required however, when "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." *Id*. Similarly, the duty to order a consultative examination is only necessary where

---

[6] The SSA eliminated this provision and § 404.1512(e)(1), effective March 26, 2012. *See generally* How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10,651 (Feb. 23, 2012). The new protocol for recontacting medical sources is set forth in 20 C.F.R. §§ 404.1520b, 416.920b. *See Gray v. Astrue*, 2012 WL 1521259 at *3 n.1 (E.D.Pa. 2012).

the claimant has shown that the record as developed is not sufficient for the ALJ to make a determination. *Thompson v. Halter*, 45 Fed. Appx. 146, 149 (3d Cir. 2002) (citing 20 C.F.R. §§ 404.1517, 416.917). Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record. *See* 20 C.F.R. § 404.1519a(b).

Here, we find no conflicts or ambiguities in the medical records that would have required the ALJ to seek further clarification, or necessitated a consultative examination. Dr. Bergren, the Plaintiff's treating physician for his vision impairment, reported in June 2009 that Plaintiff was otherwise healthy with no systemic medical problems, and was not taking any medications (AR 198). On August 6, 2009, when contacted by the Social Security Administration, Plaintiff stated that he was not being treated for any other conditions and did not have a primary care physician (AR 206). On August 8, 2009, Plaintiff reported no limitations resulting from his arthritis on his disability Questionnaire. He reported a wide variety of daily and social activities, and indicated that he was able to "walk a long ways," had no problem paying attention, could follow instructions, got along well with authority figures, and was "good" at handling stress (AR 129; 131; 1324-135). Dr. Santora, his treating physician for his vision impairment, reported on March 30, 2010 that Plaintiff had no exertional or postural limitations (AR 305). In addition, Plaintiff did not testify to any physical limitations resulting from his arthritis at the hearing before the ALJ (AR 49). He testified that he could lift 25 pounds, had no difficulty sitting, and was able to walk (AR 44). In sum, there was sufficient record evidence to support the ALJ's decision without further development of the record. Accordingly, we find no error in this regard.

Finally, Plaintiff argues that the ALJ failed to identify contrary medical evidence in rejecting Dr. Schorr's extreme limitation. *See* [ECF No. 10] p. 11. The ALJ discussed all of the medical and opinion evidence and ultimately rejected that portion of Dr. Schorr's opinion that Plaintiff would miss four or more days per month on the permissible grounds that it was unsupported by the record and Plaintiff's daily activities. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (noting that a treating physician's opinion on the nature and severity of a

11

claimant's impairment is only given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.") (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). In making this determination, the ALJ relied on Dr. Santora's assessment, who concluded that Plaintiff had no exertional or postural limitations, and had no limitations in his ability to lift and carry. The ALJ also relied on the opinion of Dr. Bryan, who concluded that Plaintiff could perform light work with some limitations. It is well settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence). Therefore, Plaintiff's argument is without merit and substantial evidence supports the ALJ's decision not to afford controlling weight to Dr. Schorr's opinion.

## V.   CONCLUSION

For the reasons discussed above, Plaintiff's Motion will be denied and the Commissioner's Motion will be granted. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD H. WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-99 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this 29th day of April, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF No. 9] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 12] is GRANTED.  JUDGMENT is hereby entered in favor of Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Richard H. Wheeler.

The clerk is directed to mark the case closed.

                                         s/ Sean J. McLaughlin
                                            United States District Judge

cm:     All parties of record